And we'll proceed to our fifth case this morning, James v. Hale. Counsel, and if I may, if I may please report. I represent the plaintiff in this matter and we're asking that the order granting the defendant's motion for summary judgment be reversed. In this case, the district court had enough evidence from all the affidavits and the medical records and the depositions to deny summary judgment and should have gone to trial. We believe that even absent the affidavit issue, there was sufficient evidence to state that. But I do quickly want to get into the affidavit issue because I think it fills in some gaps. It was never meant to be a substitute. It was never meant to be some sort of substitute and relied upon as the only evidence in the case. It was only meant to supplement or fill in gaps that were never asked about in his deposition. So let's talk about that affidavit. Number one, it was based on a first amendment complaint that was very detailed. It was not a normal complaint because it was pro se and so it already basically had his version of events. There's no authority for this procedure of filing an affidavit at the summary judgment stage and indeed after you filed your response to the summary judgment motion that purports to attest or verify to the allegations in the complaint. There's no authority for that process. Yes, Your Honor. The Castro decision indicates that specifically in that case you had a pro se litigant who in response to... This litigant is not pro se. This litigant is represented. I understand, Your Honor. It's a different case. I understand but they specifically indicated it was sufficient in that case. What we have in this case is no different. There is some authority for treating a verified complaint when it's verified at the beginning of the litigation as an affidavit at a later stage in the case. There isn't any authority for this retrospective kind of process that you used as counsel for your client after all the discovery is closed to go back and say everything I said in the complaint is true and expect that to carry the day at summary judgment. That would be unheard of. Your Honor, I don't see it any different than if you just type out an affidavit and swear to it because what he did was... Are you actually standing by what's in this affidavit complaint? Let's combine the retrospective affidavit and the allegations in the complaint because the allegations in the complaint are grossly to what your client testified to in his deposition. They don't just provide clarification. They are just flat-out wrong and different from what he testified to, particularly as to the chronology. Well, Your Honor, I can get into the disputes but I wanted to just quickly address whether or not it was proper to have a litigant do something that is in writing because this was written out. He said everything in this writing is true and accurate. It would be no different... And you stand by that as you stand here in front of us today. You stand by the truth of every one of the allegations in the complaint that you had your client attest to in this after the fact affidavit that you in fact notarized. No, I don't. You don't stand by those. I stand by the procedure. I'm asking about the specific allegations in the complaint. You stand by those as facts. Yes, I can go into the facts that are wrong. Because many of them are wrong. And I can get into that. But how did you then and how do you stand here in front of us and represent that these are true when in fact they're false? Because I can get into the parts that were false, that were wrong first. So now you're in the complaint because parts of it are wrong and in fact not true even though you tried to tell the district court that all of these things are true. You had your client swear to it as true even though you knew and presumably he knew because it was a different chronology at the deposition that much of what was in the complaint was in fact false. So you submitted a false affidavit. No, Your Honor. I did not know it was false because here... You had to know it was false because everything that had happened before that in the litigation demonstrated that the original allegations in the complaint were in fact false in several respects, material respects. Could I get into those facts? One is the date that he was released from jail. Okay. The only... I can see that that was wrong. That was an error. It was an oversight in our state. It's not an oversight. It's a falsehood. You perpetrated a fraud on the court by attempting to pass off the allegations in the complaint as facts based on this after the fact retrospective affidavit from your client. Your Honor, I did not... That's not only sham, it's just, it's fraud. Your Honor, I did not look at that date and say when he was released from jail. And you should have. You're right, it's negligent. It's not fraudulent, Your Honor. It's negligent that I should have noticed that in fact he was released on the 24th and he describes a couple of events that happened afterwards when he would have been released from jail. Correct. I should have noticed that. Yes. That's a material falsehood that you just had your client swear to. Okay. And you submitted it to the court to try to defeat summary judgment. But that... And you're defending that? But that part of it had absolutely nothing to do... It doesn't matter. So if... Let's even set that aside. I think it had a lot to do with the substance of the claim. But you're standing here admitting that you submitted a false affidavit. No, I'm saying that it... And we should accept everything else that's in the affidavit under this unorthodox procedure? Yes, because otherwise if there's one error in the affidavit, then the whole affidavit is thrown out. And that can't be the rule either. That should be the rule in this situation. But that's not what the sham affidavit rule says. The sham affidavit rule says it must be done with great care. The sham affidavit rule exists to prevent precisely what happened here, which is an attempt to contradict what your client testified to in deposition about the chronology of events in this case. No, because the subject of what he was released from jail was not even a subject matter of the summary judgment. And I did not submit... It was part of his deposition. And he testified to a certain complaint. He never testified to when he got out of jail in the deposition. Yes, he did. There's passages in the deposition about when he was released from jail. They conflict by six days with what was alleged in the complaint that you had him swear to as a matter of fact. Again, I was asking him to swear to the issues that were the subject matter of the summary... That's not what the affidavit said. The affidavit said, I swear that all of these paragraphs, from paragraph 6 to the very end, you excluded only the jurisdiction and venue allegations. Everything else, you had your client swear to as a matter of fact, and then you notarized it and submitted it to the court to try to defeat summary judgment when you knew those things were not true. I did not know those were not true. Again... How could you not know they were true? Your client had testified to it. I did not focus on when he was released from jail because that had nothing to do with our claim. Now, should I have caught that? Absolutely, I should have caught that, okay? But that's negligent, okay? What I'm saying is... And you're asking us to salvage you from this summary judgment against your client based on misdedication conduct? This is astonishing. Your Honor, again, I don't think the whole affidavit should be thrown out because of one... It's not just a single paragraph. It's multiple paragraphs in this affidavit that incorporates, by reference, the complaints and swears that everything in it is true. Multiple paragraphs that are false. For example. And contradict what he testified to. For example, there are none other than when he was released from jail and he got the date wrong, February 20th. That is the only thing that was false in that. Yes, and he testified to a whole course of conduct where he was filing sick call complaints and that the officials at the jail were ignoring him and alleges all kinds of bad conduct that occurred. Which was not... In fact, after he was released from jail. No, it was not. All of that occurred before he was released from jail and he testified to that. That's not what it says in the complaint. No, that is absolutely not true. He alleges that all of the complaints that he made to the nurses occurred before late February when he was released. He said that occurred in late January. That is not contradicted by any record. Now, does it contradict the medical records in this case? Somewhat, but that's expected in any kind of... Can I just ask you to react to one thing real quick? Sure. Okay, and here's what... Here's the... I want to set the whole dialogue aside for a minute. I'll tell you what I think is a really difficult issue for you, okay? If we just move past all that. I don't know whether we can or we can't, but let's... Okay. On February 19th, Nurse Hale declines to call an ambulance, right? Or make an arrangement for her to have him shuttled to the hospital, okay? And the reason that she does so is because she knows that he has an appointment with a surgeon the next morning, right? Yes. Okay. That's all agreed upon. We don't... Nobody's disputing that fact. I think it's very difficult for you to say that that's just... It's just objectively unreasonable under the, you know, the pretrial detainee standard, and we have to have, you know, a trial here. Because what happened is bad. I mean, the facial swelling and all that. But that, to some extent, that's what it is, right? I mean, he's not in cardiac arrest. He's not, you know, you don't have a, you know, open bleeding or anything like that. She knows he's going to see somebody the next morning. I think that's a tough fact for you. Well, here's how I'd respond to that, Your Honor. One is, put aside the affidavit for a second. In his own deposition, he testified that for weeks, he was, at least for one week, he was complaining directly to Hale that she was directly across from the cell and that she was doing absolutely nothing about it, okay? And in the affidavit, he has a couple more weeks of complaints. Now, so I think that has to be put into context. This is not just someone for the first time who comes to them and says, I want to go to the ER. Second of all, this is someone who had swelling, pain, and had to be treated, you know, immediately. And the doctor who treated him the next day said it was urgent that he receive this medication. And our own expert also said that by that time, it was urgent, okay, and that this caused the later infection, the delay. Now, I understand that I'm not saying a basis of liability is that she was not there at the jail over the weekend, okay? What I am saying is that because of the delay in not getting to the ER immediately, then it further caused those two or three days. I understand, thanks. But I would go back to the record. Your time has expired. May it please the court. My name is Abby Fritz, and I represent the appellee in this case, Nurse Hale. Your Honors, we're here today because Mr. James simply had insufficient evidence to defeat Ms. Hale's motion for summary judgment. Because of that insufficient evidence, Mr. James sought to verify his first amended complaint even past the last hour in this case. We were three years into the case, a year and a half after the first amended complaint was filed, after discovery, after Ms. Hale's motion for summary judgment, and frankly, even after Mr. James responded to Ms. Hale's motion for summary judgment, did he even seek leave to attach these affidavits. Your Honors, this was all done with the sole purpose of creating a sham affidavit in order to evade an inevitable loss at Your Honors, there's three issues that I would like to discuss today. The first one is that the District Court properly questioned whether or not Mr. James should even have been afforded the opportunity to submit such an affidavit so late in the case. And the second is that this affidavit is the culmination of both factual and procedural errors in this case, which was used for the sole purpose of defeating Nurse Hale's motion for summary judgment. And additionally, although Nurse Hale does maintain that based on the facts presented, even if this court were to consider some of the information in the complaint, there is no evidence which would suggest that her actions were objectively unreasonable. Your Honors, to my first point, the verifying of the complaint, if this court looks at their decision in the Ford case, the court did not commend the practice of using such an affidavit to verify the complaint. And as was discussed earlier, as Castro, but also in Ford, that was a pro se plaintiff. And even still, on a pro se plaintiff, this court did not commend that practice for the exact reason that we're here today, because it can create a sham affidavit. Your Honors, the district court on page six of the appendix specifically stated that this process that was used creates a mockery of the summary judgment process, which is exactly what happened here. We had discovery. Plaintiff had the opportunity to conduct that discovery. And it is their burden of proof. They simply could not meet that in this case. Your Honors, to my second point, is that the egregious factual errors, and also the procedural errors in this case, is the exact definition of a sham affidavit. It was used for the sole purpose of thwarting summary judgment in this case. If you even look at the cases that talk about sham affidavits, if we look at Castro, if we look at Beckel, if we look at Dunn, if we look at Buckner, those statements all involved potential inconsistencies with oral testimony or interviews, sworn interviews. This case goes even further that the so-called lapses in memory, the so-called inconsistencies, which actually plaintiffs conceded that they're inaccuracies, but those occurred at the affidavit stage, not at the deposition stage. Frankly, Mr. James' deposition is more accurate on some points than his affidavit that he had the availability of the medical records. He had the availability of the discovery. He had availability of his affidavit and that the court correctly considered it to be such and thereby excluded it. That was not an abuse of discretion. That analysis applies to Mr. James' affidavit but not the mother's because the mother was never deposed as I understand it? Well, the sham affidavit could still apply to the mother's. The rule applies to affidavits that contradict other sworn testimony. We don't have other sworn testimony from her. Correct, Your Honor. We don't have sworn testimony from her. I mean, she doesn't add much. That's Ms. Hale's point is that even if we were to consider, even if that should have been considered by the district court, it was harmless error because when you look at what she is swearing to, it doesn't give any information. It swears that she talked to her son about his medical condition. That doesn't provide any relevant material facts against Nurse Hale. It does state that at one point she did speak with Nurse Hale and actually I believe Nurse Hale agreed that she did speak with Mr. James' mother at some point but it doesn't give a time frame. And if it doesn't give a time frame, you know, we're talking about between January 12th and after he got out of the facility in February 24th. So it could have been before he was seen by an outside specialist on January 16th, before he was seen by an outside specialist on January 26th, before he was seen by another outside specialist on January 28th. So we don't have any information so therefore it really is a material fact for the purposes of summary judgment. Your Honor, Mr. James' counsel today has argued that there's only a couple specific instances of inaccuracies or even potentially inconsistencies and that even those are not relevant to the issues here today. But I want to point to one in particular that I found interesting. It was that statement of material fact number nine is that Mr. James never was seen by any medical staff. It's not an inconsistency. Those are pretty absolute words. Never and any. Which we know is not true. We know that Mr. James testified at his deposition that he could see a nurse daily, sometimes multiple times in a day. So therefore, that is just one example of a relevant material fact that is outright wrong. Your Honor, didn't he admit though, he admitted in his deposition, didn't he, that he admitted the nurses make these daily rounds. I thought there was some, he's trying to make some point about confusion about the definition of sick call. Your Honor, he did say, Mr. James did say in his And again, this isn't Nurse Hale. Nurse Hale was an administrator. But yes, the nurses do make daily rounds in the infirmary and he had the ability to request sick call from that nurse, to submit a sick call slip, or to even just confer with the nurse. And in fact, if you look at the record on January 25th, he actually was seen by two separate nurses, one who he reported pain to and one who he reported no pain to. So he does have the ability to see these medical professionals and request help if he needs that medical assistance. And in fact, he received care from three, is it three, or at least three times received care from outside providers during that time frame. Yes, Your Honor. And well, if we don't include the emergency room visit, he was seen by three times by two separate providers in January. And then he was seen again in February 19th, or excuse me, February 20th by Dr. Kramer. But I would like to get to my third point then, that Dr. Kramer's conduct actually supports that Nurse Hale's conduct was not objectively unreasonable. When he went to go see him, he actually did not, Dr. Kramer did not diagnose Mr. James with an infection. Interestingly enough, if you look at the statement of material facts that Mr. James presents, he doesn't cite any of these medical records because there was no harm. There was no infection that was diagnosed. There was no abscess that was diagnosed either on February 20th or by St. Elizabeth's Hospital on February 25th when the second CT scan was done. Even more so, if you're didn't even send him home with antibiotics. He waited approximately six to eight hours, if you're looking at, depending on the time frame, how long it took the CT scan to occur, that he phoned in these antibiotics, which Dr. Kramer testified to, and it's in the record, that they were prophylactic. Cipro. Cipro, yes. But it was meant because, as a backup plan, in case there was an infection developing. Very common. Yes, Your Honor, so Dr. Kramer, who's a specialist, did not feel that there was a need to send him to the emergency room. And even then, he wasn't so worried about plaintiff getting this medication that he didn't call the jail to speak to a live person. I think everybody would understand a jail operates 24 hours a day, seven days a week. So he left a voicemail, and even in the voicemail, or in his notes, that he would call back later. Your Honor, for these reasons, if there's no other questions, we ask that you affirm the district court's ruling. Thank you. And the case is taken under advisement.